## Swift and Co. v. Northcott.

(Decided June 18, 1912.)

### Appeal from Garrard Circuit Court.

Counterclaim—Verdict—Sufficiency of Evidence.—In an action involving balance due on an account, and a counterclaim by defendant for damages growing out of the transaction, evidence examined and held that the finding of the jury on the counterclaim is flagrantly against the evidence.

G. B. SWINEBROAD, W. I. WILLIAMS for appellant.

LEWIS L. WALKER for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Appellant, Swift and Company, is a corporation engaged in the business of handling and selling on commission eggs, chickens, turkeys and other produce and poultry. It has a branch office at Providence, Rhode Island, which it conducts in the name of the Providence Beef Company.

Appellee, H. B. Northcott, is a citizen of Lancaster Kentucky, and conducts a poultry business at that place, and also at Stanford, Kentucky. During the years 1905 and 1906 he had an arrangement with Swift and Com-

pany, by which he consigned to that company at Providence, R. I., turkeys and other poultry to sell for him on commission. To this end, Swift and Company advanced him money to carry on the business. When the shipments were received and disposed of, that company would deduct from the proceeds its commission for handling and disposing of the shipments and making the sales, and the amounts advanced Northcott. Under this arrangement, appellant advanced to appellee and paid out for him on account of insurance, freight, storage and other items of expense, the sum of $16,640.64. The proceeds of the shipments which appellee consigned to appellant amounted to $15,764.14, thus leaving a balance in favor of appellant amounting to $676.50, after the deduction of $200 paid by appellee in cash.

The balance of $676.50 not having been paid, appellant brought this action against appellee to recover same. The correctness of the account was not denied by appellee, but he pleaded by way of counterclaim damages to the amount of $1,500. The basis of his counterclaim is that he consigned to appellant during the month of November, 1905, three carloads of turkeys for the Thanksgiving market, that the turkeys arrived in time for the Thanksgiving market, but that appellant negligently delayed the sale of same until December 8, 1905, when the turkeys had become unfit for sale, and by reason of that fact, and the further fact that the market price of turkeys had in the meantime declined, the turkeys were sold for much less than they could have been sold for upon their arrival in Providence. A trial before a jury resulted in a verdict and judgment for appellant for the amount sued for, and a verdict in favor of appellee for the full amount of the counterclaim. Judgment was rendered accordingly, with the further direction that the amount of appellant's judgment be credited as an offset against the judgment obtained by appellee. From that judgment this appeal is prosecuted.

For appellant it is insisted that the verdict of the jury finding in favor of appellee on his counterclaim was flagrantly against the evidence.

Three carloads of turkeys are involved. The first car left Lancaster on November 18, 1905, and arrived at Providence on Friday, November 24, 1905. The second car left Lancaster on November 19, 1905, and arrived at Providence on Saturday, November 25, 1905.

The third car left Lancaster on November 20, 1905, and arrived at Providence on Monday, November 27, 1905. According to appellee's evidence, these turkeys were shipped in order that they might be sold on the Thanksgiving market. Thanksgiving day was November 30th. Of the turkeys shipped, about nine-tenths of them were No. 1, and one-tenth, No. 2; that is, of the 313 boxes, about 31 or 32 of them were No. 2 turkeys, and the remaining 282 boxes were No. 1 turkeys. All of these turkeys were properly prepared, cooled, graded and packed in boxes and shipped in refrigerator cars to their destination at Providence. The cars were properly iced. Had the turkeys been disposed of on their arrival number ones would have brought upon the market about 22 cents a pound. The market declined after Thanksgiving until December 8, 1905, from four to six cents. Had the turkeys been held until December 8th, they would have become stale, and the market value decreased. The turkeys in question brought on an average of about 14 1-2 cents a pound net. There were 67,723 pounds. At an average loss of about 2 1-2 cents a pound, the amount of damages was more than the $1,-500. Appellee further testifies that the statement which he received with reference to the sale of these turkeys shows that they were sold on December 8, 1905. During the progress of the action, appellee moved to require appellant to file as an exhibit an itemized statement of the account sued on, showing the amounts of the sales of the shipments, and the dates thereof. The motion was sustained, and appellant filed a statement headed Providence, R. I., December 8, 1905. Below is "sold for account of H. B. Northcott." Then follows the number of boxes of turkeys, and the amount that each sold for.

Appellee admits having received a telegram from appellant's manager to the effect that the turkeys arrived in bad condition, and, according to his best recollection, he sent a telegram suggesting that perhaps it would be best to freeze the turkeys. Appellee also admits having received a letter from appellant, bearing date December 8, 1905, advising him of the fact that the turkeys had arrived in bad condition, and attributing their condition to the fact that they must have been packed in boxes before they were thoroughly cooled. The letter further stated that appellee's telegram, suggesting the advisability of freezing the turkeys had been received, and that, in the opinion of appellant's manager, if the tur-

keys' had been frozen they would have been a total loss. The letter also stated that some of the turkeys were in good condition, and were bought by appellant's customers at about 22 cents. Had they all been in this condition, customers would have paid for them at that price.

For appellant, Edwin Tetlow, appellant's former manager, but who at the time of giving his testimony had been retired on a pension, testified that the first car that left Lancaster reached Providence on the Friday before Thanksgiving, and was unloaded on the forenoon of the day it reached there. The second car that left Lancaster arrived on the Saturday before Thanksgiving, and was unloaded on the afternoon of that day. The third car arrived in Providence on the Monday next before Thanksgiving. The Thanksgiving market did not open until Monday, and the turkeys from the three cars were sold on Monday, Tuesday and Wednesday preceding Thanksgiving. Witness examined the turkeys from each car an hour or two after they had been unloaded. He found them in bad condition. They were in the condition commonly called "het." In his opinion, there were too many turkeys to the box, and fully 90 per cent of them were in bad condition.

Mr. Leslie R. Hovey, another representative of Swift and Company, testifies that he exmined the turkeys in question on November 27, 1905, at Providence, R. I. He found them a trifle mouldy, and in a slightly decomposed condition, and very thin and poor. Basing his opinion as an expert on the long experience he had in such matters, he concluded that the turkeys were not properly cooled and boxed for shipment, and that the turkeys themselves were thin, poorly packed and poorly crated.

It also appears from the testimony for appellant that the statement of the account was not intended to show that the turkeys in question were sold on December 8, 1905, but that during the rush incident to Thanksgiving business, the accounts were not made out, but were made out at the convenience of the appellant after the rush of business was over. The date at the beginning of the account was intended merely as the date when the account was made out, and not to show the date on which the turkeys were actually sold.

It further appears that appellee never complained to appellant of the manner in which it had handled his turkeys, or of the prices received for them. On the con-

trary, he wrote them repeatedly that his reason for not paying the account was due to the fact that he had had a bad year in business. His first complaint that there was anything wrong with the handling of the turkeys was made in his answer and counterclaim, which was filed during the month of December, 1907. In his letters he asked appellant to be a little indulgent with him. On July 20th, appellee sent appellant a check for $100 on account, with the promise of a like amount the next month. On September 5, 1906, he sent them another check for $100.

Appellee explains that his failure to complain to appellant of the handling of the turkeys was due to the fact that for a long time he had no information that they had been improperly handled, and when he did acquire this information, he did not want to sue appellant in a foreign court, but wanted to adjust the matter in a local court whenever appellant sued him.

In order for appellee to recover on his counterclaim, it was necessary for him to show that the turkeys arrived in Providence in good condition, and that the loss thereon was due to the fact that appellant negligently failed to sell the turkeys within a reasonable time after their receipt; and that during that time the turkeys became stale, or the market price declined. It may be conceded that there is sufficient proof to show that the turkeys were properly packed and shipped, and with no evidence to the contrary, this evidence would create the presumption that they arived in Providence in proper condition. But we have the evidence of two witnesses to the effect that when the turkeys did arrive, they were not in proper condition. That the contention that they were not in good condition when they were received was not an after-thought, is confirmed by the telegram advising appellee of their condition. These witnesses also state that the sales of these turkeys were made on November 27th, 28th, and 29th, just preceding Thanksgiving. The only circumstance to the contrary is the fact that the statement of account rendered appellee, and likewise the statement filed in this action, is dated December 8, 1905. When this account was first mailed to appellee, it was accompanied by a letter written the same day, and this letter refers to the previous sales of the turkeys. When the statement of the account is considered in connection with the explanation made with regard to it, it is evident that the account was

made out after the sales had taken place, and was not intended to indicate the exact dates on which the sales took place. If, as a matter of fact appellee based his belief that the sales of the turkeys had been delayed because the account rendered bore at the head of it the date December 8, 1905, then he had this information when the account was received, and that is really all the information he ever had on the question. If that was sufficient to induce him to believe that the sales as a matter of fact took place on December 8, 1905, and that he was damaged by the negligent handling of the turkeys, we fail to see any reason why he should not have made complaint of this long before the filing of this action. While the date on the account may be a circumstance tending to support appellee's contention, it at most creates merely a suspicion, and is not sufficient to overcome the positive evidence to the effect that the sales were actually made before Thanksgiving day. We therefore conclude that the verdict of the jury is flagrantly against the evidence.

Judgment reversed and cause remanded for new trial consistent with this opinion.